this case, including responses to requests for admissions and sworn deposition testimony. *See* SOF ¶¶ 13–37, 56–79, 81–88, 97–118.

### A. Mayo's Educational Function Is Inextricably Intertwined with Its Patient Care and Research Functions.

Mayo was founded 100 years ago on the bedrock principle that the "needs of the patient come first." SOF ¶ 13.[1] But education was always integral to this principle. "The Mayo founders shared the conviction that the highest quality patient care is best achieved in an environment of academic inquiry and continuous learning." *Id.* ¶ 14.[2] In 1910, Dr. William Mayo stated that "[t]he best interest of the patient is the only interest to be considered, and in order that the sick may have the benefit of advancing knowledge, a union of forces is necessary." *Id.* ¶ 15.[3] Similarly, in 1926, Dr. Charles Mayo stated that "[t]here are two objects of medical education: To heal the sick, and to advance the science." *Id.* ¶ 16.[4] Education has been the through line of Mayo's mission and purpose since its founding.

To accomplish this core value, Mayo's Articles of Incorporation set forth Mayo's purposes. These include "the study and investigation of human ailments," "to conduct the practice of medicine and surgery," "to conduct and coordinate programs of medical education and medical research," and "to offer programs of graduate and undergraduate education and instruction in all fields of medicine." *Id.* ¶ 33.[5] Mayo long ago determined that integrating these purposes was the most effective way to care for the sick. As reflected

- 27 -

in its official mission statement, Mayo endeavors to "provid[e] the best care to every patient through integrated clinical practice, education, and research." *Id.* ¶ 103.[6]

Courts addressing related tax issues involving Mayo have concurred that Mayo's patient care and educational functions are integrated. *See Mayo Found. for Med. Educ. and Research*, 282 F. Supp. 2d at 1014 ("Actual care in the service of patients is inherent in [Mayo's] educational process. It really cannot be separated from that."); *Mayo Found.*, 236 N.W.2d at 774 ("[P]atient care at the Mayo Clinic is inextricably interwoven with the educational and research functions …."). Mayo representatives have uniformly testified that Mayo's education, research, and patient care are integrated functions. SOF ¶ 111; Resp. SOF ¶ 25.[7] Thus, attempting to artificially separate patient care and research from education is disingenuous and does not reflect the reality of Mayo's operations.

The USA does not and cannot meaningfully argue to the contrary. The only sworn testimony included in the USA's submission is an incomplete snippet of Dr. Warner's testimony where the USA's counsel read a statement from a draft brochure—"excellence in healthcare is the primary purpose of Mayo Clinic, and all collaborative efforts in research and education are undertaken with the goal of helping the patient"—and asked him whether it was accurate. Resp. SOF ¶ 25. Dr. Warner later explained that, in answering this question affirmatively, he understood healthcare to include "everything we do at Mayo," including "patient care" and "education." *Id.*

---

[6] Prior to 2010, Mayo's mission statement was also consistent with this endeavor: "Mayo will provide the best care to every patient every day through integrated clinical practice, education and research." *Id.* ¶ 102.

The other evidence upon which the USA chooses to rely are irrelevant out-of-court statements by Mayo personnel about its three-interlocking-shield logo, commitment to care for the sick, and world-class reputation as a healthcare provider to the "sickest, most complex patients." ECF Doc. 156 at 15. For the logo, the USA references a fragment from a sentence in a patient journal to the effect that the center and larger shield of Mayo's three-shield logo represents patient care. *Id.* at 14. But absent from the USA's brief is the sworn testimony of Dr. Warner, Mayo's Rule 30(b)(6) designee on this topic. He testified that the shields are interchangeable. Resp. SOF ¶ 25.[8] But whether the larger, center shield represents patient care is of no moment. The shields are interlocking because the activities are intertwined and linked. No activity is independent or separate from the other. *Id.* Thus, to the extent it is relevant at all, the logo supports Mayo's position, not the USA's.

The USA also tries to support its argument that providing education is not Mayo's "particular purpose" by pointing to public statements made by Mayo leaders that it is "the most trusted brand in healthcare" and an "integrated medical group-practice" that specializes in treating "serious and complex" conditions. *See* ECF Doc. 156 at 14. Those statements bolster the USA's claim if, and only if, Mayo's patient care is viewed as distinct from its educational function. Not surprisingly, the USA identifies no case law supporting that proposition; more surprisingly, it does not attempt to distinguish the case law directly contradicting it. Indeed, the USA has admitted that patient care is integral, necessary, and inherent in education at Mayo. SOF ¶¶ 97–99.

The USA then stretches credulity by relying on limited references to education by Mayo employees during press interviews (controlled by the interviewer), a TEDx talk with

- 29 -

high school students, Ken Burns's 2018 documentary about Mayo (controlled by Ken Burns), and instructions to local community charities. *See* ECF Doc. 156 at 16–17. Many of these sources contain quotes by former CEO Dr. John Noseworthy, including "[o]ur specialty is patients with serious and complex illness," "our mission of having patient-centered care," and "[Mayo] partner[s] with patients and physicians worldwide to treat complex diseases." *Id.* at 15–18. Again, this argument is based on the false premise that patient care and education are mutually exclusive. And when these statements are put in context, Dr. Noseworthy explains that he never intended to imply a change to Mayo's Mission Statement, which reflects that Mayo is "an integrated organization which is committed to offering the best environment to educate and train the medical professionals of today and the future." Resp. SOF ¶ 66.[9] As he stated, "Mayo's education and research activities are ultimately focused on strengthening the provision of patient care." *Id.* ¶ 20.[10] That hardly elevates patient care over education.

Finally, with regard to the community charities document, the USA quotes a single line from that document's instructions—that Mayo has "the primary mission of patient care"—without revealing that the instructions also direct charities to the Mayo website for a complete statement of its mission. *See* ECF Doc. 157-23 at 3 (directing applicants for charitable donations to http://www.mayoclinic.org/about/missionvalues.html for a full discussion of "the mission and values of Mayo"). That Mission Statement states that Mayo will "provid[e] the best care to every patient *through integrated clinical practice, education, and research.*" SOF ¶¶ 102–03 (emphasis added).

In sum, the notion that Mayo's educational function is somehow separate and distinct from—let alone subordinate to—Mayo's clinical and research functions is a litigation-fueled falsehood unsupported by the record and rejected by at least two courts.

### B. Mayo Operates the Schools and Provides Essential Support to Them.

That leaves the USA's final argument: that because Mayo has administrative functions, it is somehow separate and distinct from the educational mission of its wholly-owned Schools. That premise is wrong and should be rejected. Mayo is actively involved in the Schools' educational functions and provides services integral to the Schools' operation. It cannot be written off as a mere "administrative body." Mayo shares, and is critical to, the Schools' educational activities.

For example, as noted above, Mayo was directly responsible for the faculty at the Schools, controlling faculty operations and outcomes, directing faculty activities, and determining faculty appointments, academic rank, compensation, course assignments, and course scheduling. SOF ¶¶ 58–60. Mayo either had title to or owned the affiliate that had title to the buildings, the majority of which were used for educational purposes during the Refund Years. *Id.* ¶¶ 90–91. It was also responsible for creating the Schools' curriculums, determining where and when the courses and programs would be held, and which physician faculty members would provide the formal instruction. *Id.* ¶ 59. The organization controlling the faculty, curriculum, and majority of the buildings where the Schools operate can hardly be separated from the Schools' educational activities and function.

Moreover, Mayo funded the Schools' operations. It paid the faculty members' salaries and benefits, and restricted more than 95% of its endowment for education and